**In the United States District Court**
**for the District of Kansas**

---

Case No. 23-cv-3048-TC

---

TYREE TEVIN JACKSON,

*Plaintiff*

v.

GERALD BORON,

*Defendant*

---

**MEMORANDUM AND ORDER**

Plaintiff Tyree Jackson sued Ford County Sheriff's Deputy Gerald Boron, alleging that Boron used excessive force to restrain him in violation of the Fourteenth Amendment. Doc. 13. Boron moves to dismiss. Doc. 35. For the following reasons, Boron's motion is granted.

**I**

**A**

Boron seeks dismissal for failure to state a claim. And Jackson's pleadings are subject to certain standards that apply only to pro se plaintiffs. The following describes each applicable standard.

**1.** A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*,

656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

Ordinarily, a motion to dismiss is decided on the pleadings alone. But "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted). A court may also consider documents necessary to resolve disputed jurisdictional facts when a party challenges the factual basis for subject matter jurisdiction. *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507–09 (10th Cir. 2023).

**2.** These rules do not operate in a vacuum. When plaintiffs, such as Jackson, proceed pro se, a court must construe those pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on a litigant's behalf, assume facts not pled, or act as his or her advocate. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**B**

Jackson sued Ford County Sheriff's Deputy Gerald Boron for restraining him in a cell. Doc. 13 at 3–4.[1] The genesis of that suit occurred on October 31, 2021, when Jackson alleges he got into a fight with (presumably) another pretrial detainee in a cell. *Id.* at 3. Later that day, Boron, who was not wearing a uniform, entered the cell to take pictures. *Id.* Jackson alleges that he "didn't know who [Boron] was, so [he] put [his] hands into [a] boxing stance." *Id.* Boron then "rushed into the cell," put Jackson "on the floor . . . in a chokehold," "put his knee on [Jackson's] neck," and handcuffed Jackson. *Id.* After Boron handcuffed Jackson, Jackson "got up off the floor to try to charge at [Boron] again." *Id.* The detainee Jackson earlier fought and an unnamed officer intervened to stop Jackson from charging at Boron. Doc. 13 at 3. Approximately one month later, Jackson saw a nurse because his "neck wouldn't stop hurting." *Id.* at 4.

Based on this incident, Jackson sued Boron for excessive force in violation of the Fourteenth Amendment. *See generally* Doc. 32. He later amended his Complaint to allege that Boron and an unknown correctional officer violated his Eighth Amendment rights. Doc. 11 at 2–3. He then amended his Complaint a second time, alleging only that Boron violated the Fourteenth Amendment by using excessive force. Doc. 13 at 2–3. Jackson seeks "payment for physical damage and [his] medical bill." *Id.* at 6.

While Jackson's federal lawsuit was pending, the State of Kansas filed criminal charges against him. Doc. 29-3. In particular, the allegation was that Jackson committed the crime of battery on a law enforcement officer in violation of Kan. Stat. Ann. § 21-5413(c)(1)(B), arising out of his aforementioned encounter with Boron. Doc. 13; Doc. 29-3. The state court arraigned him and he initially pled not guilty. *Id.* at 1, 3 (citing Kan. Stat. Ann. § 21-5413(c)(1)(B)).

Based in part on the ongoing state-court proceedings, Boron moved to dismiss Jackson's federal suit. Boron argued that he was entitled to qualified immunity, or, in the alternative, that abstention was proper pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), because the state case remained pending as of the date Boron moved to dismiss.

[1] All document citations are to the document and page number assigned in the CM/ECF system.

*See* Doc. 29. Ultimately, the case was stayed pending resolution of Jackson's state criminal prosecution. *See* Doc. 32 (concluding *Younger* abstention was warranted given Jackson's ongoing state-court prosecution and that a stay rather than dismissal was appropriate).

The state criminal proceedings have now concluded. Specifically, Jackson pled guilty to and has been convicted of an amended charge of battery in violation of Kan. Stat. Ann. § 21-5413(a)(1), and the state court has imposed a sentence of 30 days. Doc. 35-1; *see also State v. Jackson*, No. 2021-CR-000653 (Ford County, Kansas, District Court), Index No. 22.[2]

After the State proceedings concluded, Boron filed a motion seeking to lift the stay in this case. Doc. 33. Magistrate Judge Gwynne Birzer granted the motion. Doc. 34. Following the Order granting Boron's Motion to Lift Stay, Boron filed a Renewed Motion to Dismiss, arguing that Jackson's claim is barred by *Heck* and thus Jackson fails to state a claim, or, alternatively, that Boron is entitled to qualified immunity. Doc. 35 at 5–14.

As part of the order granting the request to lift the stay, Magistrate Judge Birzer also directed Jackson to provide his new address pursuant to D. Kan. R. 5.1(b)(3) on or before July 20, 2026. Doc. 34. On July 23, 2026, the Order that had been mailed to Jackson was returned to the Clerk's office as undeliverable. Doc. 36. In addition, Boron's counsel served the motion on Jackson by mailing it to his last known address. Doc. 35 at 4 n.3. That satisfied Boron's obligations. *See* D. Kan. R. 5.1(b)(3) ("Each … pro se party must notify the clerk in writing of

---

[2] The entire docket and all underlying pleadings concerning the state criminal prosecution can be found by querying the Kansas District Court Public Access Portal. That tool is available at https://prodportal.kscourts.gov/prodportal. *See* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment"); *White v. Lucero*, 135 F.4th 1213, 1219 (10th Cir. 2025) (noting that courts can take judicial notice of documents "as long as the documents have 'a direct relation to matters at issue.'"); *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (holding, on a Rule 12(b)(6) motion, that the court could take judicial notice of state court's filings in the underlying litigation).

any change of address."); Fed. R. Civ. P. 5(b)(2)(C) (stating service is effective upon "[m]ailing it to the person's last known address."). Jackson has not responded to the motion to dismiss and the time to do so has passed.[3] If Jackson failed to receive the motion, such failure owes to his noncompliance with the local rules and Judge Birzer's Order. Doc. 34.

## II

Jackson contends that Boron violated his Fourteenth Amendment right to be free from excessive force. But Jackson's allegations fail to state a violation of clearly established law. Accordingly, Boron's motion to dismiss is granted.

### A

Jackson asserts a claim against Boron pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023). Thus, to state a viable Section 1983 claim, a plaintiff must establish that a person, acting under color of state law, caused him or her to be deprived of a right secured by the Constitution or laws of the United States. *See Torres v. Madrid*, 592 U.S. 306, 310 (2021); *accord Medina v. Planned Parenthood of S. Atl.*, 606 U.S. 357, 365 (2025).

There are two general iterations of a Section 1983 claim. One is suing the individual officer directly. That claim is akin to suggesting that the individual officer personally participated in conduct that is alleged to have deprived the plaintiff of an enforceable right, *Cuervo v. Sorenson*, 112 F.4th 1307, 1314 (10th Cir. 2024), failed to intervene

---

[3] Pursuant to D. Kan. R. 7.1(c), if a response is not filed by the applicable deadline, the motion is considered to be uncontested. But even an unopposed motion to dismiss obligates a court to examine the complaint and satisfy itself that dismissal is warranted, as a party's silence does not by itself carry the movant's burden. *Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir. 2003).

while another engaged in unconstitutional conduct, *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022), or failed to supervise others who violated the plaintiff's rights, *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). The other is suing either entity responsible, whether by naming that entity directly or suing the agent of the entity in his or her official capacity. *See generally Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (applying *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *accord Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015). To assert an official-capacity claim, the plaintiff must allege both that his or her harm was caused by a constitutional violation committed by the entity's agent, *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006), and that the entity's custom, policy, or practice caused the unconstitutional conduct, *Monell*, 436 U.S. at 694–95. *See generally Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1048–49 (10th Cir. 2022).

When a plaintiff asserts an individual-capacity claim, the defendant can assert the defense of qualified immunity. That doctrine attempts to balance several competing interests. Suits against government actors allow those wronged by government misconduct a method of redress. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). But non-meritorious suits exact a high cost from society and government officials by unduly interfering with the discharge of official duties. *See id.*; *see also Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277 (10th Cir. 1998). Therefore, government officials performing discretionary duties are immune from suit when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have been aware. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (recognizing municipalities may not rely on their officers' entitlement to qualified immunity). Whether an official is immune turns on the objective reasonableness of the official's actions, considering the laws clearly established at the time the official acted. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Objective reasonableness is not an exacting standard; qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *See White v. Pauly*, 580 U.S. 73, 79 (2017); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The analytical framework for the invocation of qualified immunity at the Rule 12 stage is settled. *See, e.g.*, *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021) (per curiam); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). First, the complaint must allege conduct that, assuming the allegations are true, violates the Constitution or laws of

the United States. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Second, the law must have been clearly established at the time of the alleged conduct such that the defendant had fair notice that his or her conduct was unlawful. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). If both inquiries are answered in the affirmative, the motion to dismiss must be denied. But, if the answer to either is no, the defendant is entitled to judgment as a matter of law. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023). A court has discretion to address the inquiries in either order. *Pearson*, 555 U.S. at 236.

Discerning whether the relevant legal rule was clearly established is a narrow and context-specific exercise. *See Bond*, 595 U.S. at 12; *Rivas-Villegas*, 595 U.S. at 5. In short, the precise contours of the legal right must have been so clear that every reasonable official in that circumstance would have understood what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct in the particular situation. *See Mullenix v. Luna*, 577 U.S. 7, 13–14 (2015); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *al-Kidd*, 563 U.S. at 740; *see also Rivas-Villegas*, 595 U.S. at 5–8 (reversing a denial of qualified immunity where the precedent relied upon had "materially distinguishable" facts that "did not give fair notice" to the official). Practically, this means a "Supreme Court or Tenth Circuit decision" must have held that the same conduct (or very nearly the same conduct) as the conduct at issue is a violation of law. *Wise v. Caffey*, 72 F.4th 1199, 1208–09 (10th Cir. 2023). To be sure, a case "directly on point" is not necessary for a right to be clearly established, but existing precedent must have placed the constitutional question "beyond debate." *White*, 580 U.S. at 78–79.

**B**

Boron first asserts that Jackson's excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Doc. 35 at 5. *Heck* bars a Section 1983 claim when a judgment in the plaintiff's favor "would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. Whether that applies here is unclear.

The confusion exists because it is conceivable that a conviction for battering or resisting an officer can coexist with a viable claim that the officer used excessive force during the same encounter. In *Hooks v. Atoki*, 983 F.3d 1193, 1200–02 (10th Cir. 2020), for example, the Tenth Circuit recognized the possibility that an officer may respond to a battery with more force than the circumstances warrant without negating the fact that the battery occurred. According to *Hooks*, the *Heck* rule

bars claims premised on force used while the plaintiff was committing the battery, but not claims premised on force used after he stopped resisting. *Hooks*, 983 F.3d at 1200–02; *see also Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125 (10th Cir. 1999) (finding that the plaintiff resisted a lawful arrest "may coexist with a finding that the police officers used excessive force to subdue him").

Jackson's allegations could describe the force Boron allegedly used in response to the battery rather than facts that contest whether the battery happened in the first place. Doc. 13 at 3. Whether they in fact do would require parsing the factual basis of Jackson's plea, which is not a model of clarity. There is no need to divine the answer because *Heck* is not jurisdictional and it is plain that Jackson's claim fails on the merits. *See Jiron v. City of Lakewood*, 392 F.3d 410, 413 n.1 (10th Cir. 2004) (declining to decide whether *Heck* barred claims because *Heck* is not jurisdictional and the merits were dispositive); *see also Johnson v. Spencer*, 950 F.3d 680, 697 (10th Cir. 2020) (labeling as dicta the statement in *Jiron* concerning whether *Heck* was jurisdictional, but recognizing that many Tenth Circuit unpublished cases have relied on *Jiron* to skip the *Heck* bar and resolve cases on the merits); *accord Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 520 n.28 (10th Cir. 2023).

**C**

Boron also seeks dismissal, claiming that Jackson fails to allege conduct violating his clearly established constitutional rights. Doc. 35 at 7. That unopposed request is granted because the Second Amended Complaint fails to allege a violation of Jackson's clearly established constitutional rights.

**1**

The Due Process Clause of the Fourteenth Amendment governs excessive force claims made by pretrial detainees. *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*, 978 F.3d 1165, 1171 (10th Cir. 2020). "A defendant violates the Fourteenth Amendment by purposely or knowingly using force against a pretrial detainee that is 'objectively unreasonable.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)). The only state-of-mind requirement is that the officer's use of force be deliberate rather than accidental or negligent; whether that deliberately used force was excessive is judged solely by an objective standard. *Kingsley*, 576 U.S. at 395–97, 400–01; *Colbruno v. Kessler*, 928 F.3d 1155, 1163 (10th Cir. 2019) ("[T]here is no subjective element of

an excessive-force claim brought by a pretrial detainee."); *see also Brown v. Flowers*, 974 F.3d 1178, 1182–83 (10th Cir. 2020). Objective reasonableness turns on several non-exclusive factors, including the relationship between the need to use force and the amount of force used, the extent of the plaintiff's injury, any effort the officer made to limit the use of force, the severity of the security problem at issue, the threat the officer reasonably perceived, and whether the plaintiff was actively resisting. *Rowell*, 978 F.3d at 1171 (citing *Kingsley*, 576 U.S. at 397).

Considering those factors, Jackson's allegations do not plausibly describe an objectively unreasonable use of force. Start with the severity of the security problem and the threat Boron perceived. Courts assess these factors "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight," with appropriate deference to the practices jail officials judge necessary to preserve order and security, and mindful that officers are "often forced to make split-second judgments" in circumstances that are "tense, uncertain, and rapidly evolving." *Kingsley*, 576 U.S. at 397, 399 (quotations omitted); *Rowell*, 978 F.3d at 1171–72.

According to Jackson, the circumstances Boron confronted were heightened. Jackson had just been in a fight with another detainee, and when Boron entered the cell, Jackson squared up in a "boxing stance." Doc. 13 at 3. A reasonable officer confronting a detainee who had just been fighting another inmate and who was now positioned to fight the officer would perceive a threat and an immediate need to gain control. *See Gallegos v. City of Colo. Springs*, 114 F.3d 1024, 1031 (10th Cir. 1997) (holding that an officer who saw a man pivot toward the officers and crouch "into a wrestler's position" with his fists clenched "harbored an objectively reasonable belief there was a serious risk" of being struck and therefore "used a reasonable amount of force to bring [him] face-down on the pavement");[4] *Kingsley*, 576 U.S. at 397 (listing "the severity of the security problem at issue" and "the threat reasonably perceived by the officer" among relevant considerations).

In addition, Jackson's allegations suggest he actively resisted Boron's attempt to restrain him. He alleges that even after being

---

[4] While *Gallegos* and other cases cited below arose in the context of a Fourth Amendment excessive force challenge, the applicable standard is identical to a Fourteenth Amendment challenge. *See McCowan v. Morales*, 945 F.3d 1276, 1283 n.6 (10th Cir. 2019) (noting the same objective standard governs Fourth and Fourteenth Amendment excessive force claims).

handcuffed, he "got up off the floor to try to charge at [Boron] again." Doc. 13 at 3. That favors finding the force reasonable. *See Iqbal*, 556 U.S. at 679 (explaining that assessing the plausibility of a claim "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). Active resistance has warranted tackling and even carotid restraints so long as the force does not continue after resistance ceases. *See Emmett v. Armstrong*, 973 F.3d 1127, 1136 (10th Cir. 2020) (concluding that even a "rather halfhearted" flight "would certainly warrant" the officer's tackling the suspect, and that the resistance factor weighed against force only as to the taser deployed after the suspect "was no longer fleeing" and "was not actively resisting"); *McCoy v. Meyers*, 887 F.3d 1034, 1048–51 (10th Cir. 2018) (granting qualified immunity for strikes and a carotid restraint used before the plaintiff was "effectively subdued," while explaining that "a suspect's initial resistance does not justify the continuation of force once the resistance ceases").

Another consideration is the relationship between the need for force and the amount used, and any effort Boron made to temper it. Force is proportional to the need when it is "the level of force necessary to gain compliance, but no more." *Rowell*, 978 F.3d at 1172 (quotation omitted); *see also Est. of Booker v. Gomez*, 745 F.3d 405, 425 (10th Cir. 2014). Jackson alleges that Boron took him to the floor using a chokehold and a knee to his neck and then handcuffed him. Doc. 13 at 3. The Tenth Circuit has drawn the constitutional line not at the technique itself but at its continuation after resistance ends, as it has granted qualified immunity to officers who used strikes and a carotid restraint on a potentially dangerous individual who had "not yet been effectively subdued," while denying it for force used after that individual was bound and no longer a threat. *McCoy*, 887 F.3d at 1048–52; *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (holding repeated use of force against an effectively subdued individual is unconstitutional).

Jackson's allegations do not establish that Boron's actions fall on the wrong side of that line. He does not allege how long the holds lasted, that they continued after he was handcuffed or after he stopped resisting, or that Boron applied any force beyond what was needed to get him into handcuffs. Without such allegations, the Second Amended Complaint does not permit a plausible inference that the amount of force exceeded the need for it. *See Robbins*, 519 F.3d at 1247–48 (explaining that the allegations must be sufficient that, if assumed true, the plaintiff plausibly rather than merely speculatively has

a claim for relief, and that the degree of specificity required depends on the type of claim alleged).

Finally, the injury is minimal at best. The only injury Jackson has identified is that his neck hurt and that he saw a nurse about a month later. Doc. 13 at 4. There are no allegations of any diagnosis, treatment, or lasting harm. An allegation of pain carries little weight on its own. The injury factor "is not dispositive" in either direction, *Rowell*, 978 F.3d at 1173–74, and, untethered to any allegation that the force producing the pain was unnecessary, it does not move the claim from conceivable to plausible. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (noting a plaintiff must show both that the officers "used greater force than would have been reasonably necessary" and an actual, non-de minimis injury (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.25 (10th Cir. 2007))).

To be sure, a chokehold or other neck restraint can violate a detainee's Fourteenth Amendment rights. *See, e.g.*, *Est. of Booker v. Gomez*, 745 F.3d 405, 425 (10th Cir. 2014) (denying qualified immunity because the officers used various types of force, including a carotid restraint, on a detainee while he was on his stomach, handcuffed, and not resisting, and held the restraint longer than the officer was trained to). But that occurs when law enforcement apply such maneuvers to a restrained, non-resisting inmate and then prolongs the force past the point of need. *Id.* at 424–25.

Jackson alleges no facts that would implicate the rule in *Gomez*. Indeed, according to his own telling, he had squared up to fight when Boron used force, he tried to charge Boron again even after being handcuffed, and he says nothing about the holds continuing after he had stopped resisting. Doc. 13 at 3. Weighing the *Kingsley* factors, accordingly, nothing in Jackson's telling plausibly suggests that Boron's use of force was objectively unreasonable given the situation Jackson admits he created. *Cf. Rowell*, 978 F.3d at 1172–74 (assessing the objective reasonableness of the officer's actions based in large part on the plaintiff's actions before and during the use of force).

In sum, Jackson's Second Amended Complaint fails to assert a constitutional violation. In particular, it lacks the supporting factual allegations necessary to sustain his claim. *See Warnick v. Cooley*, 895 F.3d 746, 753 (10th Cir. 2018) (finding that the plaintiff's "bare statements" alleging a constitutional violation lacked "specific factual allegations" to "cross the line from a merely possible claim of evidence fabrication

to a plausible one"); *see also Hill v. Torrazaz*, No. 23-3198, 2023 WL 6294225, at *7 (D. Kan. Sept. 27, 2023) (concluding that pro se litigant failed to plausibly allege a Fourteenth Amendment excessive force violation where the plaintiff merely stated that the defendant "maliciously kneed" him in retaliation for the plaintiff engaging in some constitutionally protected action); *accord Twombly*, 550 U.S. at 555.

**2**

Even assuming a constitutional violation occurred, it did not violate clearly established law. To survive Boron's motion to dismiss, Jackson must identify a Supreme Court or Tenth Circuit decision, or a robust consensus of persuasive authority, placing the unconstitutionality of the challenged conduct beyond debate when Boron acted. *al-Kidd*, 563 U.S. at 741–42. He has not done so. Nor could he. Although the Tenth Circuit has held that it is clearly established that pinning a pretrial detainee on the ground, placing him in a chokehold, and tasing him is unconstitutional when the person is not resisting and is restrained in handcuffs, *see Gomez*, 745 F.3d at 429, that factual scenario is far afield of what Boron—according to Jackson's Second Amended Complaint—encountered in the jail cell. Accordingly, Boron is entitled to qualified immunity. *See Est. of Dizmang v. Reed*, No. 25-1118, 2026 WL 1948098, at *4 (10th Cir. July 6, 2026) (affirming dismissal on qualified immunity grounds where defendant tackled decedent who had repeatedly broken free of handcuffing attempts, held plaintiff in a chokehold, and then applied full body weight on decedent's neck until applying handcuffs, because defendant "used [force] in the process of restraining" decedent's and "relented when [decedent] was finally in handcuffs," which distinguished *Gomez* and other precedents involving force applied to a restrained, non-resisting person).

**III**

For the foregoing reasons, Boron's Renewed Motion to Dismiss, Doc. 35, is GRANTED.

It is so ordered.

Date: September 18, 2026

s/ Toby Crouse
Toby Crouse
United States District Judge